IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NAZMUL HOQUE and                                    07-CV-793-BR
MASUMA HOQUE,

        Plaintiffs,                         OPINION AND ORDER

v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES; WILLIAM
McNAMEE, Portland District
Director; GERALD HEINAUER,
Director, Nebraska Service Center;
EMILIO GONZALEZ, Director, Department
of Homeland Security; MICHAEL
CHERTOFF, Secretary, Department
of Justice; MICHAEL B. MUKASEY,
United States Attorney General;
ROBERT S. MUELLER, III; Director,
Federal Bureau of Investigation;
MICHAEL A. CANNON, Chief, National
Name Check Program,

        Defendants.

**NICOLE HOPE NELSON**
**PHILIP JAMES SMITH**
Nelson|Smith LLP
208 S.W. First Avenue
Suite 360
Portland, OR  97204
(503) 224-8600

       Attorneys for Plaintiffs

**KARIN J. IMMERGUT**
United States Attorney
**JAMES E. COX, JR.**
Assistant United States Attorney
1000 S.W. Third Avenue
Portland, OR 97204
(503) 727-1026

       Attorneys for Defendants

**BROWN, Judge.**

This matter comes before the Court on Plaintiffs' Motion for Summary Judgment (#17) and Defendants' Cross-Motion for Summary Judgment (#21).

For the reasons that follow, the Court **GRANTS** Plaintiffs' Motion and **DENIES** Defendants' Motion.

### BACKGROUND

The following facts are taken from the parties' Joint Stipulated Facts unless otherwise noted.

Plaintiffs Nazmul Hoque and Masuma Hoque are husband and wife and citizens of Bangladesh.  Nazmul Hoque was first admitted to the United States in 1996 on a J-1 visa to participate in a

2 - OPINION AND ORDER

medical residency and fellowship program at Cook County Hospital in Chicago, Illinois. Nazmul Hoque completed his residency and the fellowship program in October 2000.

In October 2000 under the sponsorship of the United States Department of Agriculture, Nazmul Hoque's immigration status was changed from J-1 to H-1B so Nazmul Hoque could serve as a primary-care physician in Glenden Beach, Oregon. Since October 25, 2000, Nazmul Hoque has, in fact, worked as a primary-care physician at the Glendon Beach Medical Center.

On June 26, 2004, the United States Citizenship and Immigration Services (USCIS) approved Nazmul Hoque's Form I-140 application for a national-interest waiver on condition that Nazmul Hoque finish his five years of medical service in an area with a shortage of health-care professionals. On August 25, 2004, Nazmul Hoque filed a Form I-485 application with the USCIS's Nebraska Service Center[1] to adjust his immigration status from H-1B to that of a lawful permanent resident (LPR) based on the USCIS's June 2004 approval of his national-interest waiver. The purpose of the Form "I-140 and I-485 filings is to obtain [LPR] status for Plaintiff and any qualified dependent spouse . . . through his employment in the United States." Heinauer Decl. at ¶ 4.

---

[1] The USCIS Service Centers in Nebraska and Texas handle employment-based adjustment of immigration status cases.

3 - OPINION AND ORDER

When an individual applies for an adjustment of immigration status, USCIS conducts several security and background checks including a Federal Bureau of Investigation (FBI) fingerprint check, a check against the Interagency Border Inspection System (IBIS) managed by the Department of Homeland Security (DHS), and an FBI name check.

Although Defendants have completed the FBI fingerprint and IBIS checks as to both Plaintiffs and those checks did not reveal any derogatory information, the USCIS has not yet adjudicated Plaintiffs' Form I-485 applications because, according to Defendants, the FBI name check for Nazmul Hoque is not complete and Masuma Hoque's application cannot be adjudicated until the security and background checks for Nazmul Hoque are complete. Nazmul Hoque's name-check request was submitted to the FBI on October 7, 2005, and Masuma Hoque's name-check request was submitted to the FBI on October 19, 2005.

On May 29, 2007, Plaintiffs filed a Complaint for Declaratory, Injunctive, and Mandamus Relief in this Court in which they assert Defendants have breached their duty to Plaintiffs and have violated the Administrative Procedures Act (APA), 5 U.S.C. § 555(b), by failing to adjudicate Plaintiffs' Form I-485 applications within a reasonable time.  Plaintiffs, therefore, request the Court (1) to assume jurisdiction over this action and (2) to issue a Writ of Mandamus compelling Defendants

to adjudicate Plaintiffs' Form I-485 applications.

On October 5, 2007, Plaintiffs filed a Motion for Summary Judgment in which they assert the Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in combination with the APA and also pursuant to 28 U.S.C. § 1361 and move the Court to enter an order requiring Defendants to adjudicate Plaintiffs' Form I-485 applications.

On October 26, 2007, Defendants filed a Motion for Summary Judgment in which they contend the Court (1) lacks subject-matter jurisdiction over this matter and (2) even if the Court has jurisdiction, the delay in adjudicating Plaintiffs' Form I-485 applications is not unreasonable.

**STANDARDS**

**I.   Summary Judgment**

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id.*

5 - OPINION AND ORDER

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id.* "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936*, 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of

the claim, the court may grant summary judgment.  *Id*.

## II.  The APA and 28 U.S.C. § 1331

The APA provides:  "With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."  5 U.S.C. 555(b).  In addition, under the APA "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  "Agency action" includes a failure of the agency to act.  *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 61 (2004).  The APA, therefore, authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

The APA does not provide an independent basis for subject-matter jurisdiction.  *See Califano v. Sanders*, 430 U.S. 99, 107 (1977).  The APA, however, in conjunction with federal-question jurisdiction pursuant to 28 U.S.C. § 1331, may provide a federal court with jurisdiction to "compel agency action unlawfully withheld or unreasonably delayed."  *See, e.g., Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1161 (N. D. Cal. 2007)(court held the APA in conjunction with § 1331 "vest[ed]" the court with jurisdiction to compel agency action unlawfully withheld or unreasonably denied), and *Chao v. Gonzales*, No. C07-1562 PVT, 2007 WL 3022548,

at *2 (N.D. Cal. Oct. 15, 2007)(court concluded the APA in combination with § 1331 provided the court with jurisdiction to review unlawfully withheld agency action). As the Ninth Circuit explained:

> A good deal of confusion among courts and litigants has been spawned by Congress' choice of words in the APA. The APA allows that agency actions meeting certain criteria are "subject to judicial review." 5 U.S.C. § 704. However, the Supreme Court has made it clear that the phrase "subject to judicial review" does not confer a grant of subject matter jurisdiction. In *Califano v. Sanders*, 430 U.S. 99, 107 . . .(1977), the Supreme Court settled a long standing controversy by holding that 28 U.S.C. § 1331, rather than the APA, confers jurisdiction on federal courts to review agency action. *Id.*

*Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 830 (9th Cir. 2002). In other words, "[i]n the absence of a specific statutory provision to the contrary, district courts have jurisdiction to review agency action as part of their general federal question jurisdiction, 28 U.S.C. § 1331." *Proyecto San Pablo v. I.N.S.*, 189 F.3d 1130, 1136 n.5 (9th Cir. 1999).

To invoke jurisdiction under the APA, a plaintiff must establish:

> (1) an agency had a nondiscretionary duty to act and (2) the agency unreasonably delayed in acting on that duty. Once a [plaintiff] has proven a right to relief under the circumstances, it is the reviewing court's duty to "compel agency action unlawfully withheld or unreasonably delayed."

*Chao*, 2007 WL 3022548, at *2 (quoting *Gelfer v. Chertoff*,

8 - OPINION AND ORDER

No. C 06-06724 WHA, 2007 WL 902382, at *1 (N.D. Cal. Mar. 22, 2007)(citing *Norton*, 542 U.S. at 63-65)).

### III. Mandamus Act

Under 28 U.S.C. § 1361, the Mandamus and Venue Act of 1962, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  Mandamus is available only when (1) the plaintiff's claim is clear and certain, (2) the defendant official's duty is ministerial and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available. *Johnson v. Reilly*, 349 F.3d 1149, 1154 (9th Cir. 2003).

When the relief a plaintiff is seeking is the same under either the APA or the Mandamus Act, "proceeding under one as opposed to the other is not significant."  *Dong*, 513 F. Supp. 2d at 1161 (citing *Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997)), and *Hernandez-Avalos v. I.N.S.*, 50 F.3d 842, 845 (10th Cir. 1995)("'[a] mandatory injunction [issued under the APA] . . . is essentially in the nature of mandamus.'").

## DISCUSSION

**I.  The Court has jurisdiction over Plaintiffs' claims**.

For the Court to have jurisdiction over this matter pursuant

9 - OPINION AND ORDER

to the APA and Mandamus Act, Defendants would have to have a nondiscretionary duty to act. According to Defendants, 8 U.S.C. §§ 1255 and 1252 make clear the decision whether to grant an adjustment of immigration status is discretionary, and, therefore, the Court does not have jurisdiction over this matter. Specifically, Defendants contend even though the APA together with 28 U.S.C. § 1331 may provide a federal court with jurisdiction to "compel agency action unlawfully withheld or unreasonably delayed," 8 U.S.C. § 1252(a)(2)(B)(ii) divests the Court of jurisdiction to review claims relating to the adjustment of resident aliens.

Section 1255(a) of the Immigration and Nationality Act (INA) provides in pertinent part: "The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe."[2] In addition, § 1252(a)(2)(B) of the INA provides:

> Notwithstanding any other provision of law (statutory or nonstatutory), including . . . section[ ] 1361 . . . no court shall have jurisdiction to review-
>
> * * *

---

[2] Even though § 1255(a) refers to the Attorney General as the official who may grant an adjustment of immigration status, the authority to adjudicate applications for adjustment has been transferred to the Secretary of Homeland Security and the USCIS. *See* 6 U.S.C. §§ 271(b)(5) and 8 C.F.R. § 245.2(a).

10 - OPINION AND ORDER

> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) [dealing with asylum] of this title.

The Ninth Circuit has not addressed the question whether § 1252 together with § 1255 divests the Court of jurisdiction to review actions of the USCIS with respect to Form I-485 applications. Some courts, however, have agreed with Defendants' position and concluded they do not have jurisdiction to review the USCIS's failure to process Form I-485 applications within a reasonable time. *See, e.g., Grinberg v. Swacina*, 478 F. Supp. 2d 1350, 1352 (S.D. Fla. 2007)(court concluded "[s]ections 242 and 245 of the Immigration and Nationality Act . . . preclude judicial review of any discretionary 'decision or action' of the Attorney General in immigration matters . . . includ[ing] the pace at which immigration decisions are made."); *Li v. Chertoff*, 482 F. Supp. 2d 1172, 1177 (S.D. Cal. 2007)(court concluded "[t]hese statutes clearly convey Congress's intent to preclude courts from reviewing discretionary decisions or actions of USCIS regarding I-485 applications."); *Safadi v. Howard*, 466 F. Supp. 2d 696, 698-700 (E.D. Va. 2006)(same); *Zheng v. Reno*, 166 F. Supp. 2d 875, 880-81 (S.D.N.Y.2001)(same).

On the other hand, numerous other courts have concluded the duty to adjudicate the applications is not discretionary, even

11 - OPINION AND ORDER

though the decision whether to grant an adjustment of immigration status is discretionary. *See, e.g., Cao v. Upchurch*, 496 F. Supp. 2d at 573 (E.D. Pa. 2007) (court held "[w]hile 8 U.S.C. § 1255(a) specifically places the decision of whether to adjust immigration status in the discretion of the Attorney General, it says nothing about the pace of such a decision, and certainly does not confer on the Attorney General discretion to let a petition languish indefinitely."); *Tang v. Chertoff*, 493 F. Supp. 2d 148, 153-54 (D. Mass. 2007)(court concluded "[t]he clear meaning of 8 U.S.C. § 1252(a)(2)(B)(ii) is that courts may not review decisions specified as discretionary by the INA. Despite the care taken in the INA to specify the substance of an adjustment of immigration status decision as discretionary, the pacing of such a decision is not so specified."); *Elmalky v. Upchurch*, No. 3:06-CV-2359-B, 2007 WL 944330, at *3-*5 (N.D. Tex. Mar. 28, 2007)(court held  § 1252(a)(2)(B) does not preclude judicial review over nondiscretionary actions); *Duan v. Zamberry*, No. 06-1351,
2007 WL 626116, at *2 (W.D. Pa. Feb. 23, 2007)(court held § 1252(a)(2)(B)(ii) only strips the court of jurisdiction to review those decisions within the Attorney General's discretion as specified in the statute; *i.e.*, the court does not have jurisdiction to review the decision to adjust immigration status, but that lack of jurisdiction does not extend to review of the

pace of processing the application).

In addition, the United States District Court for the Northern District of California has addressed this issue at least ten times in the past year, and each time it has concluded the USCIS has a nondiscretionary duty to adjudicate Form I-485 applications. See *Chao*, 2007 WL 3022548, at *3 (court concluded "the duty to adjudicate [adjustment of immigration status] is not discretionary" even though the decision whether to grant the adjustment is discretionary); *Dong*, 513 F. Supp. 2d. at 1166 (same); *Konchitsky v. Chertoff*, No. C-07-00294 RMW, 2007 WL 2070325, at *3 (N.D. Cal. July 13, 2007)(court held "defendants have a nondiscretionary duty to act upon plaintiffs' I-485 application and plaintiff has a right to have his application processed."); *Toor v. Still*, No. C07-0645 BZ, 2007 WL 2028407, at *2 (N.D. Cal. July 10, 2007)("8 U.S.C. § 1255(a) grants the Attorney General discretion over whether to grant or deny an application for adjustment, not whether to adjudicate the application."); *Dmitriev v. Chertoff*, No. C 06-07677 JW, 2007 WL 1319533, at *3 (N.D. Cal. May 4, 2007)(same); *Wu v. Chertoff*, No. C 06-07880 SI, 2007 WL 1223858, at *3 (N.D. Cal. Apr. 25, 2007)(court concluded "taken together, the APA, the INA, and [8 C.F.R. § 245.2(a)(5)] establish a clear and certain right to have immigration status adjustments adjudicated, and to have them adjudicated within a reasonable time frame."); *Baker v. Still*,

No. C 06-7456 MEJ, 2007 WL 1393750, at *2 (N.D. Cal. May 9, 2007)(court held the defendants had a statutorily prescribed duty to adjudicate the plaintiff's application within a reasonable time under 5 U.S.C. § 555(b)); *Gelfer*, 2007 WL 902382 (same); *Singh v. Still*, 470 F. Supp. 2d 1064, 1067 (N.D. Cal. 2007)(court found the government has a nondiscretionary duty to act on an I-485 application and explained "there is a difference between the INS's discretion over how to resolve an application and the INS's discretion over whether it resolves an application."); *Aboushaban v. Mueller*, No. C 06-1280 BZ, 2006 WL 3041086, at *2 (N.D. Cal. Oct. 24, 2006)(same).

The *Dong* court thoroughly analyzed the question of the court's jurisdiction to review an agency's failure to adjudicate an application for adjustment of immigration status and noted "[t]he default rule is that agency actions are reviewable under federal question jurisdiction, 28 U.S.C. § 1331 and the APA, even if no statute specifically authorizes judicial review." 513 F. Supp. 2d at 1164 (citing *ANA Int'l Inc. v. Way*, 393 F.3d 886, 890 (9th Cir. 2004), and *Perez-Martin v. Ashcroft*, 394 F.3d 752, 757 (9th Cir. 2005)).  The court also noted the Ninth Circuit's admonition in *Spencer Enterprises v. United States* that 8 U.S.C. § 1252(a)(2)(B)(ii)

> refers not to "discretionary decisions," as did the transitional rules . . ., but to acts the *authority* for which is *specified* under the INA to be discretionary.  Following the "well-

14 - OPINION AND ORDER

>    established canon of statutory interpretation that
>    the use of different words or terms within a
>    statute demonstrates that Congress intended to
>    convey a different meaning for those words," we
>    must assume that this difference in language is
>    legally significant.  If Congress had intended to
>    withdraw jurisdiction over all "discretionary
>    decisions," it would have used the same language
>    found in the transitional rules.

*Dong*, 513 F. Supp. 2d at 1164 (quoting 345 F. 3d 683, 689 (9th Cir. 2003)(emphasis in original).  The *Dong* court reasoned the admonition in *Spencer* "cautions against interpreting section 1252(a)(2)(B)(ii) as a blanket grant of discretion to the Attorney General of all matters related to the adjustment of immigration status.  The discretion granted by statute is specified and limited."  *Id*. at 1164-65.  The *Dong* court also noted the similar analysis of the Fifth Circuit:

>    [O]ne might mistakenly read § 1252(a)(2)(B)(ii) as
>    stripping us of the authority to review any
>    discretionary immigration decision.  Such a
>    reading is mistaken, however, because
>    § 1252(a)(2)(B)(ii) strips us only of jurisdiction
>    to review the discretionary authority that is
>    *specified in the statute*.  As we have repeatedly
>    noted, we observe again that the language of
>    § 1252(a)(2)(B)(ii) is thoroughly pellucid on this
>    score; it does not allude generally to
>    "discretionary authority" or to "discretionary
>    authority exercised under this statute," but
>    specifically to "authority for which is specified
>    under this subchapter to be in the discretion of
>    the Attorney General."

513 F. Supp. 2d at 1165 (quoting *Ahmed v. Gonzales*, 447 F.3d 433, 436 (5th Cir. 2006)(emphasis in original)).  Ultimately, the *Dong* court concluded § 1252(a)(2)(B)(ii) did not deprive the

15 - OPINION AND ORDER

court of jurisdiction to review the plaintiff's claim that the determination of his Form I-485 application had been unlawfully withheld. *Id*.

This Court adopts the very persuasive reasoning and analysis of the United States District Court of the Northern District of California, and particularly the *Dong* court. The Court, therefore, concludes the decision whether to grant Plaintiffs an adjustment of immigration status to that of lawful permanent resident is discretionary, but Defendants' duty to make an adjudication is not discretionary. Accordingly, the Court concludes § 1252(a)(2)(B)(ii) does not deprive this Court of jurisdiction to review Plaintiffs' claim that Defendants have unreasonably delayed adjudicating their Form I-485 applications.

## II. Defendants have unlawfully delayed adjudication of Plaintiffs' Form I-485 applications for adjustment of immigration status.

Defendants contend Plaintiffs do not have a right to adjudication of their Form I-485 applications within a particular time. Some courts, however, have concluded the APA requires adjudication to be completed "within a reasonable time." *See, e.g., Chao*, 2007 WL 3022548, at *3 (citing *Konchitsky*, 2007 WL 2070325, at *4), and *Dong*, 513 F. Supp. 2d at 1169. *See also Lazli v. USCIS*, No. 05-CV-1680-ST (D. Or. Aug. 23, 2006)(court concluded USCIS had a nondiscretionary duty to adjudicate the plaintiffs' applications for naturalization and petitions to

16 - OPINION AND ORDER

remove conditions on residence within a reasonable time). Although the "reasonable time" argument is compelling, 8 C.F.R. § 103.2(b)(18), as the *Dong* court noted, contains provisions that impose specific and detailed procedural requirements for withholding adjudication of applications for adjustments of residency status. The Court, therefore, need not rely solely on the general directive of the APA that agencies act in a timely manner.

    8 C.F.R. § 103.2(b)(18) provides:

> A district director may authorize withholding adjudication of a visa petition or other application if the district director determines that an investigation has been undertaken involving a matter relating to eligibility or the exercise of discretion, where applicable, in connection with the application or petition, and that the disclosure of information to the applicant or petitioner in connection with the adjudication of the application or petition would prejudice the ongoing investigation. If an investigation has been undertaken and has not been completed within one year of its inception, the district director shall review the matter and determine whether adjudication of the petition or application should be held in abeyance for six months or until the investigation is completed, whichever comes sooner. If, after six months of the district director's determination, the investigation has not been completed, the matter shall be reviewed again by the district director and, if he/she concludes that more time is needed to complete the investigation, adjudication may be held in abeyance for up to another six months. If the investigation is not completed at the end of that time, the matter shall be referred to the regional commissioner, who may authorize that adjudication be held in abeyance for another six months. Thereafter, if the Associate Commissioner, Examinations, with the concurrence

17 - OPINION AND ORDER

>           of the Associate Commissioner, Enforcement,
>           determines it is necessary to continue to withhold
>           adjudication pending completion of the
>           investigation, he/she shall review that
>           determination every six months.

The record here does not reflect Defendants satisfied these procedural requirements of § 103.2(b)(18) in withholding adjudication on Plaintiffs' Form I-485 applications.  As noted, the APA requires courts to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C.  § 706(1).  Accordingly, the Court concludes Plaintiffs are entitled to summary judgment on their claims.

     Even if § 103.2(b)(18) did not apply to this matter, Plaintiffs would still be entitled to summary judgment based on the reasoning of *Chao*, *Dong*, and *Lazli* that the APA requires agencies to act in a timely manner.  Several courts have concluded, and this Court agrees, that an unjustified delay of two years in adjudicating a Form I-485 application is presumptively unreasonable.  *See, e.g., Dong,* 513 F. Supp. 2d at 1169 (court concluded a delay in adjudicating Form I-485 application for nearly two years was presumptively unreasonable); *Chao*, 2007 WL 3022548, at *6 (court concluded a delay of two years in adjudicating Form I-485 applications was presumptively unreasonable); *Gelfer*, 2007 WL 902382, at *3 (court held a delay of more than two years in processing Form I-485 application was unreasonable as a matter of law).  Here Defendants' adjudication

18 - OPINION AND ORDER

of Plaintiffs' Form I-485 applications has been delayed without justification for more than three years.  The Court, therefore, concludes such a delay is unreasonable as a matter of law.

Accordingly, the Court grants Plaintiffs' Motion for Summary Judgment and denies Defendants' Cross-Motion for Summary Judgment.

## CONCLUSION

For these reasons, the Court **GRANTS** Plaintiffs' Motion for Summary Judgment (#17), **DENIES** Defendants' Cross-Motion for Summary Judgment (#21), and

1. orders Defendant Michael B. Mukasey to instruct the FBI to complete Plaintiffs' name checks no later than February 11, 2008;

2. orders the USCIS to adjudicate Plaintiffs' Form I-485 applications no later than March 11, 2008; and

3. orders Defendants to file copies of the adjudications of Plaintiffs' Form I-485 applications with the Court within five business days of the adjudications.

IT IS SO ORDERED.

DATED this 7th day of January, 2008.

/s/ Anna J. Brown
_____
ANNA J. BROWN

19 - OPINION AND ORDER

```
                                        United States District Judge
```

20 - OPINION AND ORDER